IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

MICHAEL DEWAYNE ROBERTS,    *
#143 289
    Plaintiff,    *

    v.    *    2:04-CV-1184-MEF
        (WO)
PRISON HEALTH SERVICES, *et al*.,    *

    Defendants.    *

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Michael Roberts ["Roberts"], an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action seeking a trial by jury and damages and injunctive relief for alleged violations of his Eighth Amendment rights. Specifically, Roberts complains that Defendants acted with deliberate indifference to his medical needs by requiring him to undergo unnecessary medical treatment for tuberculosis ["TB"]. Roberts names as defendants Prison Health Services, Inc. ["PHS"], the medical contractor for the Alabama Department of Corrections ["ADOC"] since November 2003, and Warden Ike Hadley ["Hadley"], the Warden of the Elmore Correctional Facility at the time the events complained of occurred. [1]

In response to the orders of the court, Defendants filed answers, special reports, and supporting evidentiary material in response to the allegations contained in the complaint. The

---

[1] During the pendency of this action Roberts was released on parole. (*See* Doc. No. 29.)

court then informed Plaintiff that Defendants' special reports may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed a response to the special reports filed by Defendants. This case is now pending on Defendants' motions for summary judgment. Upon consideration of the motions, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motions, the court concludes that Defendants' motions for summary judgment are due to be granted

## I. DISCUSSION

*A. Standard of Review*

To survive Defendants' properly supported motion for summary judgment, Roberts is required to produce some evidence to support his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. Roberts' mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is due to be granted in favor of the moving party. *Celotex,* 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d

607 (11th Cir. 1987). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex,* 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to a liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). The record in this case demonstrates that Roberts has failed to establish that there is any genuine issue as to a material fact in order to avert judgment in favor of Defendants.

B. *The Request for Injunctive Relief*

Roberts is no longer incarcerated. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Roberts is no longer incarcerated, his request for injunctive relief has been rendered moot.

C. *The Deliberate Indifference Claim*

3

During a previous incarceration within the ADOC, Roberts was treated for TB exposure. According to the complaint, Roberts received treatment for TB in 1998 while incarcerated at the Ventress Correctional Facility. Roberts was subsequently released from prison but returned to custody in March 2004 when he was detained in the Lee County Jail. He was subsequently transferred to the Kilby Correctional Facility in June 2004 where he was tested for TB exposure. The test results were positive for exposure and "INH" therapy was recommended. Roberts complains that medical personnel placed him on this therapy despite his protestations that he previously received treatment for TB at Ventress and had been informed that he should never have another skin test because it would always show positive results. Roberts maintains that the proper method of determining TB exposure for him should be through x-rays. Roberts also complains that his medical records from Ventress could not be found for purposes of verifying his claim of prior treatment for TB. As a result, he alleges that, under threat of disciplinary action or placement on lock-up, Defendants forced him to undergo unnecessary medical treatment for TB which endangered his health. (Doc. Nos. 1, 32.)

*i. The Medical Records*

To the extent Roberts complains that the loss of his medical records amounts to a violation of his constitutional rights because it impaired medical personnel's ability to correctly treat his 2004 positive TB test, he is entitled to no relief. The Supreme Court has held that the unintentional loss of life, liberty or property does not state a cause of action

under § 1983. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Where mere negligence is involved in causing a deprivation or damage to property, no procedure for compensation is constitutionally required. *Id*. Therefore, insofar as his claim for loss of his medical records is grounded on negligence, it lacks an arguable basis in law. Moreover, Roberts has not alleged much less demonstrated that the named Defendants had any involvement in the loss of the medical records maintained at Ventress and presents no evidence that Defendants actions or inactions caused a constitutional deprivation in this regard.[2] Accordingly, Defendants' motions for summary judgment on this claim are due to be granted.

   *ii. Deliberate Indifference*

To prevail on a claim concerning an alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."). When seeking relief based on deliberate indifference of prison and/or

---

[2] Defendant PHS points out that it did not become the medical contractor for the Alabama Department of Corrections until November 3, 2003. It further maintains that it never had possession of Roberts' medical records from his previous incarceration at Ventress Correctional Facility and that such records were never made available to it. (Doc. No. 20, Exh. B - Affidavit of Aaron Bee.)

correctional medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'

6

> *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). Thus, to survive summary judgment on his claim of deliberate indifference, Roberts is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

7

Defendants maintain that on or about June 9, 2004, while incarcerated at the Kilby Correctional Facility, Roberts received a Tuberculin skin test. Following his transfer to the Elmore Correctional Facility on June 16, 2004, Dr. Winfred Williams reviewed Robert's medical records noting that his Tuberculin skin test had tested positive for exposure.[3] To treat his exposure, medical staff at Kilby had prescribed a nine-months supply of Isoniazid ("INH"), a standard treatment protocol. Dr. Williams continued to prescribe INH to Roberts pursuant to the treatment plan initiated at Kilby. The treatment plan was deemed medically appropriate and necessary not only for Roberts' protection but also for the protection of others who came in contact with him. Roberts was also enrolled in the TB Chronic Care Clinic with the goal of lessening his risk of developing active TB. (Doc. No. 20, Exhs. A, B - Affidavit of Dr. Williams.)

Because INH therapy can have harmful side effects, including the potential for liver dysfunctioning, Roberts received periodic testing to monitor his liver function. Specifically, throughout the period he was treated with INH, Roberts was monitored with hepatic enzyme panels. Dr. Williams affirms that Roberts' test results were within normal range at all times which indicated that he did not suffer any side effects from the INH therapy. (Doc. No. 20, Exhs. A, B - Affidavit of Dr. Williams.)

With respect to Roberts' allegation that he was essentially forced to undergo INH therapy despite informing medical personnel that he previously underwent such course of

---

[3] The results of Roberts' chest x-ray taken at Kilby were negative. (Doc. No. 20-2, 20-3, Exh. A.)

8

treatment, Dr. Williams points to the fact that no verifiable documentation exists which shows that Roberts previously completed the necessary nine-months treatment regimen. Consequently, in his professional medical opinion, the INH treatment started in June 2004 was medically appropriate and necessary to protect his health by reducing his chances of developing an active case of TB. Dr. Williams further states that Roberts was never forced to take the prescribed INH therapy. Instead, medical personnel prescribed this medication and provided it to him. (Doc. No. 20, Exh. B - Affidavit of Dr. Williams.)

In his opposition to Defendants' dispositive motions, Roberts complains that after his transfer to Elmore, he did not receive medical treatment for two months despite instructions that he receive monthly medical exams. Roberts also complains that he only saw a physician once during his "term of treatment." Despite complaining about dark-colored urine, night sweats, rashes, swollen joints, night sweats/fevers, headaches, tiredness, and nausea, Roberts asserts that INH therapy continued. (Doc. No. 32.)

This court has conducted a thorough and careful review of all the evidentiary materials submitted by Defendants in this case. From that review, the undersigned finds that Roberts' medical records show that he received routine, timely, and appropriate medical care, which included regular checkups at the TB Chronic Care Clinic and medical exams and treatment in connection with his various health concerns. Roberts has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other

9

medical personnel. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care."). Further, to the extent Roberts' claim is based upon his own disagreement with the prison medical staff about his medical treatment, such claim does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm* , 774 F.2d. At 1575. Additionally, any claim that specific medical procedures were impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill*, 40 F.3d at 1188. Here, the court finds that no verifying evidence has been produced tending to establish any detrimental effect of delay in providing medical services or medical care to Roberts during his incarceration at the Elmore Correctional Facility.

Based on the foregoing, the court finds that Roberts has failed to establish that his constitutional rights were violated by Defendants. Assuming, *arguendo*, that Roberts' condition constitutes a serious medical need, he has not presented evidence of Defendants' deliberate indifference. Nor has Roberts shown that the treatment decisions made by medical personnel reflected a substantial departure from accepted professional judgment, practice, or standards which tends to show that they did not make decisions based on such judgments. *See Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). While Roberts may believe that his condition did not warrant INH therapy, the fact that medical staff at both the Kilby and Elmore Correctional Facilities found this course of action medically necessary and an appropriate treatment plan does not establish deliberate indifference. As noted, a difference

of opinion between an inmate and health care personnel regarding the expediency of a specific treatment does not generally create a constitutional claim, and does not do so in the instant case. *Waldrop*, 871 F.2d at 1033; *Hamm*, 774 F.2d at 1575. Further, there is no indication in Roberts' medical records that his treatment with INH caused any organ damage nor has Roberts demonstrated that he suffered or is currently suffering any harm from the INH treatment he received at the Elmore Correctional Facility. Roberts has failed to come forward with any evidence showing that Defendants knew that the manner and environment in which he was treated created a substantial risk to him and that Defendants disregarded that risk. In the absence of such a showing by Roberts, Defendants PHS and Hadley's motions for summary judgment are due to be granted.

*D. The Forced Medication Claim*

In his complaint, Roberts maintains that the threat of disciplinary action or lock-up essentially forced him to submit to INH therapy. Defendants' contention that Roberts was not forced to take the treatment regimen remains undisputed. Nonetheless, courts faced with claims similar to that of Roberts have found such options constitutional. *See Africa v. Horn*, 998 F. Supp. 557, 560 (E.D. Pa. 1998) (policy required inmate to submit to PPD test or be transferred to a restricted housing unit for one year observation); *McCormick v. Sadler* 105 F.3d 1059, 1061 (5th Cir. 1997) (upholding policy requiring prisoner to accept preventive TB medicine or be isolated); *Karolis v. New Jersey,* 935 F. Supp. 523, 531 (D.N.J. 1996) ("federal courts should not second-guess prison regulations that might impinge on an

inmates' constitutional rights when the regulations are reasonably related to penological interests" such as preventing the spread of TB); *Westbrook v. Wilson*, 896 F. Supp. 504 (D. Md. 1995) (prison policy of placing inmates who refuse PPD testing into segregated custody is "perfectly constitutional"); *United States ex rel. Willis v. Detella,* 1996 WL 100012, at *2 (N.D.Ill. Mar.1, 1996) (regulations for administering TB tests and disciplining those inmates who refuse to be screened is rationally related to prison's interest in maintaining the health of its population).  In light of the foregoing, Defendants' dispositive motion on this claim is due to be granted.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   The motions for summary judgment filed by Defendants (Doc. Nos. 20, 24, 33) be GRANTED;

2.   Judgment be GRANTED in favor of Defendants and against Plaintiff;

3.   This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **February 12, 2007** the parties may file objections to the Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general

objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ( *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 31st day of January 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE